## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

MICHAEL SANTANA CRAWFORD,   )
                )
        Petitioner,   )
                )
vs.              )    **Case No. 09-CV-236-JHP-FHM**
                )
MIKE ADDISON, Warden,   )
                )
        Respondent.   )

## OPINION AND ORDER

This is a 28 U.S.C. § 2254 habeas corpus proceeding. Petitioner is a state inmate and appears *pro se*. Before the Court is Petitioner's petition for habeas corpus relief (Dkt. # 1). Respondent filed a response (Dkt. # 10) to the petition, and provided the state court records necessary for adjudication of Petitioner's claims (Dkt. ## 10, 11, 12). Petitioner filed a reply (Dkt. # 13). For the reasons discussed below, the Court finds the petition for writ of habeas corpus shall be denied.

### *BACKGROUND*

Around 5 a.m. on July 25, 2005, Tulsa police officer Lyle Day was dispatched to investigate a "suspicious vehicle," described as a red car occupied by a black male and a white female, at the Flying J Truck Stop, located at Admiral and 129th East Avenue, Tulsa, Oklahoma. One of the occupants had been "banned" from the property. Officer Matthew Crutchfield followed Officer Day to investigate. Upon arrival at the truck stop, a red Chevrolet Aveo drove past each of the officers, traveling westbound. Both officers noted that a black male appeared to be driving, and a white female passenger was in the back seat. Officer Day activated his emergency equipment and gave chase to the Aveo, with Officer Crutchfield following. The driver of the Aveo began speeding and ran a red light. Near the intersection of 11th and Garnett, the Aveo crossed the median and started traveling westbound in the eastbound lane. Soon thereafter, the Aveo swerved to avoid an oncoming

pickup truck driven by Pablo Carreno, but was unsuccessful. The truck hit the passenger side of the Aveo. A black male, later identified as Petitioner, exited the driver side of the car and began running. The officers ran after him and subdued him not far from the scene of the crash. Both Petitioner and a female passenger found in the back seat of his car were taken to the hospital by ambulance. Tulsa Police Officer Jason Muse was assigned to follow the ambulance to the hospital and interview Petitioner regarding the circumstances leading up to the accident. Petitioner was interviewed at the hospital, but not arrested until several days after his release from the hospital.

Based on the events of July 25, 2005, Petitioner was charged by Information on August 2, 2005, in Tulsa County District Court, Case No. CF-2005-3349, with unauthorized use of a motor vehicle (Count I), eluding an officer (Count II), leaving the scene of a personal injury accident (Count III), and driving under suspension (Count IV). See Dkt. # 12-9, O.R. at 13-14. The State also alleged that Petitioner had nine former felony convictions. Id. at 16-17. After the passenger in Petitioner's car died as a result of injuries she sustained in the accident, an amended Information was filed, adding a charge of Second Degree Felony Murder. Id. at 46. Prior to the preliminary hearing, the State dismissed Count I, and the trial court renumbered the charges as: Count I - second degree murder in commission of a felony; Count II - eluding an officer; Count III - leaving the scene of a personal injury accident; and Count IV - driving under suspension.

At the conclusion of a jury trial, Petitioner was found guilty as charged, after former conviction of two or more felonies. See Dkt. # 12-9, O.R. at 129-32. The jury recommended a sentence of life imprisonment on Count I; ten (10) years imprisonment on Count II; twenty-five (25) years imprisonment on Count III; and one (1) year on Count IV. Id. at 133-36 . On April 3, 2006, the trial judge dismissed Count II at the request of the State, and sentenced Petitioner in accordance

2

with the jury's recommendations on the remaining convictions. Dkt. # 12-8, Trans. Sent. at 3-4. The Court ruled that Count IV would run concurrently with the other counts, but Counts I and III would be consecutive. Id. at 4. Petitioner was represented during trial proceedings by attorney Rick Couch.

Petitioner appealed his convictions to the Oklahoma Court of Criminal Appeals (OCCA). Represented by attorney Stuart Southerland, he raised ten (10) propositions of error:

Proposition 1: It was reversible error for the trial court to overrule Appellant's objection to the admission of his confession.

Proposition 2: Pursuant to 21 O.S. 2001, § 11, Appellant should have been charged under the more specific negligent homicide statute, rather than second degree murder as alleged in Count 1.

Proposition 3: Appellant should not have been convicted of both second degree felony murder (with eluding as the underlying felony) and leaving the scene of a personal injury accident.

Proposition 4: It was reversible error to deny Appellant's request for a lesser-included offense instruction on negligent homicide.

Proposition 5: Two transactional felony convictions were improperly presented to the jury in the second stage over Appellant's objection.

Proposition 6: Instances of prosecutorial misconduct in violation of the Fourteenth Amendment to the United States Constitution served to prejudice Appellant.

Proposition 7: It was error for the prosecutor to question a witness about the injuries he received in the accident.

Proposition 8: Defense counsel's failure to object constituted ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution.

Proposition 9: The jury should have been provided with an instruction defining "reasonable doubt."

Proposition 10: Appellant's sentence should be modified to a term no greater than twenty years.

3

Dkt. # 10, Ex. 1. On May 2, 2007, in Case No. F-2006-367, the OCCA entered its unpublished

summary opinion affirming Petitioner's Judgment and Sentence. Dkt. # 10, Ex. 3.

On May 23, 2008, Petitioner filed a *pro se* application for post-conviction relief in the state

district court. See Dkt. # 10, Ex. 4. He claimed that: (1) he was denied the effective assistance of

trial and appellate counsel for failure to pursue competency issue; (2) he was mentally incompetent

to assist trial and appellate counsel; (3) prosecution nor defense counsel inquired or determined that

accused was competent to stand trial; (4) lack of instructions regarding competency; and (5) the

court lacked jurisdiction to try case because Petitioner was not competent. Id. at 3-4 . By order filed

June 20, 2008, the state district court denied his application. Id. Petitioner appealed. See Dkt. # 10,

Ex. 5. By order filed March 16, 2009, in Case No. PC-2009-4, see Dkt. # 10, Ex. 6, the OCCA

affirmed the district court's denial of post-conviction relief.

On April 17, 2009, Petitioner filed his federal petition for habeas corpus relief, raising the

following  twelve (12) grounds of error:

Ground 1:    It was reversible error for the trial court to overrule Appellant's objection to admission of his confession.

Ground 2:    Pursuant to 21 O.S. 2001, § 11, Appellant should have been charged under the more specific Negligent Homicide statute, rather than Second Degree Murder as alleged in Count 1.

Ground 3:    Appellant should not have been convicted of both Second Degree Felony Murder (with Eluding as the underlying felony) and Leaving the Scene of a Personal Injury Accident.

Ground 4:    Defense counsel's withholding of evidence caused a miscarriage of justice where evidence would show court's lack of jurisdiction to impose punishment.

Ground 5:    Two Transactional Felony convictions were improperly presented to the jury in the second stage over Appellant's objection.

Ground 6:    Instances of prosecutorial misconduct in violation of the Fourteenth
Amendment to the United States Constitution served to prejudice Appellant.

Ground 7:    It was error for the prosecutor to question a witness about the injuries he
received in the accident.

Ground 8:    Defense counsel's failure to object constituted ineffective assistance of
counsel in violation of the Sixth Amendment to the United States
Constitution.

Ground 9:    The jury should have been provided with an instruction defining "reasonable
doubt."

Ground 10:   Appellant's sentence should be modified to a term no greater than 20 years.

Ground 11:   Oklahoma statutes do not permit victim impact evidence in a non-capital
trial.

Ground 12:   It was reversible error to deny Appellant's request for a lesser-included
offense instruction on negligent homicide.

See Dkt. # 1. In response to the petition, Respondent asserts that Petitioner's claims are either not

cognizable, procedurally barred, or do not justify relief under 28 U.S.C. § 2254(d). See Dkt. # 10.

## ANALYSIS

### A.    Exhaustion/Evidentiary Hearing

Before addressing the claims raised in the petition, the Court must determine whether

Petitioner meets the exhaustion requirement of 28 U.S.C. § 2254(b) and (c). See Rose v. Lundy, 455

U.S. 509, 510 (1982). Upon review of the petition and the state court record, the Court finds that

Petitioner has exhausted his state court remedies.

In addition, the Court finds that Petitioner is not entitled to an evidentiary hearing. See

Williams v. Taylor, 529 U.S. 420 (2000).

5

**B.  Claims adjudicated by the OCCA**

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions.  Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001).  When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner.  See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002). Furthermore, the "determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

In this case, the OCCA adjudicated grounds 1-3 and 5-12 on direct appeal, and ground 4 on post-conviction appeal. Therefore, those claims will be reviewed pursuant to § 2254(d).

**1. Improper admission of confession (ground 1)**

As his first ground for relief, Petitioner asserts that statements he made in the hospital to Tulsa Police Officer Jason Muse were obtained in violation of the Fifth Amendment and were improperly admitted at trial. See Dkt. # 1. Petitioner's claim consists of three (3) parts. First, Petitioner contends that his statements were improperly admitted because he was not read his

<u>Miranda</u>[1] rights prior to telling Officer Muse about the events leading up to the automobile accident, including a statement that he was driving. <u>Id.</u>, attachment A at 2-5. Next, he claims that the statements were not voluntarily made because he was intoxicated and acting in a bizarre manner. <u>Id.</u>, attachment A at 5-6. Lastly, Petitioner argues that his statement that he was driving was unduly prejudicial. <u>Id.</u>, attachment A at 7.  Upon review of Petitioner's claims, the OCCA concluded that use of Petitioner's statements at trial did not violate his Fifth Amendment rights. Respondent contends relief should be denied because the OCCA's decision was not an unreasonable application of Supreme Court law.

The OCCA rejected the first part of Petitioner's ground one claim, finding that the trial court did not err in admitting Petitioner's statements because Petitioner "was not in police custody at the scene of the crash or at the hospital and that any restraint on his freedom of movement at the scene of the crash was not accompanied by police questioning." Dkt. # 10, Ex 3 at 4. As a result, because Petitioner's statements to Officer Muse were not made as a result of custodial interrogation, the OCCA held that <u>Miranda</u> safeguards did not come into play. <u>Id.</u> at 3-4.

"<u>Miranda</u> rights need only be given to a suspect at the moment that suspect is 'in custody' and the questioning meets the legal definition of 'interrogation.'" <u>United States v. Jones</u>, 523 F.3d 1235, 1239 (10th Cir. 2008).  "An individual is in custody of the authorities under <u>Miranda</u> if he is deprived of his freedom of action in any significant way, or his freedom of action is curtailed to a degree associated with formal arrest." <u>United States v. Chee</u>, 524 F.3d 1106, 1112 (10th Cir. 2008) (citation and internal quotation marks omitted).

---

[1] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966) (finding that statements made by a defendant during custodial interrogation could not be used at trial unless the defendant was first advised of his right to remain silent, his right to an attorney, and that his statements may be used against him).

While it seems clear that Petitioner made the inculpatory statement that he was driving the car which caused the crash in response to questioning by Officer Muse, it is also clear that he was not in custody of the police at the time of the questioning. Officer Muse testified that he was assigned to follow Petitioner's ambulance to the hospital to get a statement from Petitioner and try to figure out what was going on. See Dkt. # 12-6, Tr. Trans Vol. II at 506. Petitioner's statements to Officer Muse were made while Petitioner was in his hospital room. At that time, Petitioner was not handcuffed, but was later restrained by hospital staff for medical reasons. Id. at 527. He eventually was released from the hospital without being arrested.[2] The facts do not demonstrate that Petitioner was in police custody or deprived of his freedom by the police. Accordingly, this Court agrees with the OCCA that Petitioner was not in custody for purposes of Miranda at the time he told Officer Muse that he was driving the car which caused the crash.

Petitioner also argues that his statement was not voluntary because he was under the influence of medication administered by the hospital or crack cocaine.  Prior to admission of the statements made by Petitioner to Officer Muse, the trial court conducted a Jackson v. Denno[3] hearing outside the presence of the jury. See Dkt. # 12-2, Hr'g Trans. dated March 16, 2006. In addition to finding that Petitioner was not in police custody when he was questioned by Officer Muse, the trial court found that any question whether Petitioner was "under the influence" would go to the weight and credibility of the testimony, rather than its admissibility. Id. at 46. In rejecting

---

[2] The record reflects that Petitioner was arrested on July 28, 2005, when he was stopped on suspicion of larceny at the same truck stop where the July 25, 2005, chase began.

[3] Jackson v. Denno, 378 U.S. 368, 376 (1964) ("A defendant objecting to the admission of a confession is entitled to a fair hearing in which both the underlying factual issues and the voluntariness of his confession are actually and reliably determined.").

Petitioner's claim regarding the voluntariness of his statement to Officer Muse, the OCCA found

as follows:

> Further, Appellant has failed to show that his statement was not voluntary because he was hallucinating and because Officer Muse believed Appellant was under the influence of drugs or intoxicants. The ultimate test of the voluntariness of a confession is whether it is the product of an essentially free and unconstrained choice by its maker. *Gilbert v. State*, 1997 OK CR 71, ¶ 42, 951 P.2d 98, 111. A confession is involuntary or coerced if the totality of the circumstances demonstrates that the confessor did not freely decide to give the statement. *Id*. Under the totality of the circumstances approach, both the characteristics of the accused and the details of the interrogation are considered. *Id*.

> When an appellant challenges the admissibility of a statement or confession, the burden is on the State to show that it was voluntary. *Id*. Even though the accused may be to some extent under the influence of narcotics or alcohol, this fact alone does not conclusively establish the confession as involuntary. *Hardin v. State*, 1982 OK CR 124, ¶ 9, 649 P.2d 799, 801. A defendant's mental state is a factor to consider in determining the admissibility of confessions. *McGregor v. State*, 1994 OK CR 71, ¶ 14, 885 P.2d 1366, 1378. However, a statement is voluntary absent actual police coercion; police must take advantage of his alleged mental state to obtain his statement.  *Id.*, 1994 OK CR 71 at ¶ 17, 885 P.2d at 1378.

> Here, there was no toxicology screen on Appellant in evidence and despite the officer's opinion, there was no evidence Appellant was so far under the influence of drugs or intoxicants that he was unable to make a voluntary statement. Further, there is nothing in the record which supports a finding that the officer's conduct rose to the level of coercion. Accordingly, the State met its burden of proving Appellant's statements were voluntarily made.

(Dkt. # 10, Ex. 3 at 4-5). Respondent asserts that because the OCCA's rejection of this claim on

direct appeal is not an unreasonable application of the facts in evidence or contrary to Supreme

Court precedent, § 2254(d) prevents the granting of federal habeas relief on this issue.

Under the Due Process Clause a confession is involuntary "if the government's conduct

causes the defendant's will to be overborne and his capacity for self-determination critically

impaired." United States v. McCullah, 76 F.3d 1087, 1101 (10th Cir. 1996) (internal quotation

marks omitted). Nothing in the record suggests that Petitioner's statements were coerced in violation

of the Due Process Clause.  Therefore, the Court agrees with the OCCA's resolution of this claim. Petitioner has failed to satisfy his burden under 28 U.S.C. § 2254, and he is not entitled to habeas relief on this issue.

Finally, Petitioner claims that the admission of his statement that he was driving the car involved in the crash was unduly prejudicial. The OCCA denied relief on this claim, finding that "there was sufficient evidence, apart from the statement, upon which a rational trier of fact could find

Appellant guilty beyond a reasonable doubt." See Dkt. # 10, Ex. 3 at 5. Again, Petitioner fails to demonstrate that the OCCA's decision was an unreasonable determination of the facts or an unreasonable application of Supreme Court law. Petitioner's jury heard testimony from both Officer Crutchfield and Officer Day that they observed a black male in the driver's seat as the Aveo passed them in the parking lot of the truck stop. Dkt. # 12-5, Tr. Trans. Vol. II at 372, 398. Further, they each saw Petitioner exit the car from the driver's side and take off running after the crash. Id. at 376, 402. The driver of the pickup truck, Juan Carreno, testified that he saw Petitioner get out of the driver's side and run away from the crash scene. Id. at 435-36. Officer Muse testified that he observed the emergency technicians unsuccessfully try to open the jammed passenger doors of Petitioner's vehicle, leading him to conclude that Petitioner had been driving the car. Id. at 508. The emergency room physician who treated the victim, Rebecca Camp, upon her arrival at the hospital, testified that Ms. Camp's injuries were consistent with injuries received from someone in the back seat of a car rather than the front seat. Id. at 459-61. As noted by the OCCA, there was sufficient evidence, apart from Petitioner's statement, to convince a jury that Petitioner was driving the car which caused the crash and fatal injuries to Rebecca Camp. Admission of his statement was not

unduly prejudicial.  Accordingly, habeas relief shall be denied on this portion of Petitioner's ground one claim.

### 2. Claims challenging application of state law are not cognizable (grounds 2 and 3)

Petitioner asserts in his second ground for relief that, under Okla. Stat. tit. 21, § 11, he should have been charged with negligent homicide rather than second degree murder. In his third proposition, he argues that his convictions for both second degree murder and leaving the scene of a personal injury accident violated state law as they constituted an unbroken sequence of events. On direct appeal he cited § 11 as the legal basis for this claim. In his habeas petition, Petitioner does not allege a violation of his rights under the United States Constitution in either ground two or ground three. See Dkt. # 1.  The OCCA rejected Petitioner's ground two claim by reviewing state law. Dkt. # 10, Ex. 3 at 6-7. The court's rejection of his third ground relied on a § 11 analysis and a "traditional double jeopardy analysis."  Id. at 7-8.

A federal habeas court has no authority to review a state court's interpretation or application of its own state laws.  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (emphasizing that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions). Instead, when conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.  Id. at 68; 28 U.S.C. § 2241. Further, the Tenth Circuit has specifically found that, "[w]e are bound to accept the Oklahoma court's construction of its state statutes, including § 11." Dennis v. Poppel, 222 F.3d 1245, 1257 (10th Cir. 2000).

Petitioner's claims that he was charged with and convicted of the wrong crime and that he suffered double punishment in violation of Oklahoma law are based solely on interpretation and

11

application of Oklahoma law.  Therefore, those claims are not cognizable on federal habeas corpus review.  Because Petitioner's claims raised in grounds two and three are not cognizable in this federal habeas corpus proceeding, they shall be denied on that basis.

### 3. Trial counsel's failure to raise competency claim (ground 4)

In his fourth claim of error, Petitioner alleges that his trial counsel[4] provided constitutionally ineffective assistance because he failed to raise an issue of Petitioner's competency at trial. This claim was raised for the first time in his application for post-conviction relief. In denying Petitioner's application for post-conviction relief, the district court relied on Strickland v. Washington, 466 U.S. 688 (1984), and determined as follows:

> Examination of the record reveals that Petitioner's arguments fail to overcome the first tier of the *Strickland* test. Petitioner's trial counsel acted as a reasonable competent attorney under the facts and circumstances of this case.

Dkt. # 10, Ex. 4 at 5. The court further explained:

> All of Petitioner's allegations of error in the Application for Post-Conviction-Relief relate to his competence at the time of trial. However, Petitioner's trial counsel, Richard Couch, who had practiced law for twenty-two years prior to Petitioner's trial states that he had "numerous meetings" with Petitioner and that he was familiar with the process of requesting competency evaluations and had requested such with other clients. He further states that he did not observe behavior on the part of Petitioner that indicated that he was incompetent or unable to assist him in his representation.

Id.  In affirming the district court's denial of post-conviction relief, the OCCA agreed that Petitioner's claims of ineffective assistance of counsel were not supported by the record. Dkt. # 10, Ex. 6 at 3. Also citing Strickland for the standard to be used in evaluating counsel's performance,

---

[4] The Court notes that in his state post-conviction proceedings, Petitioner alleged ineffective assistance of both trial and appellate counsel for this failure. However, his habeas petition makes no mention of ineffective assistance of appellate counsel. Instead, Petitioner specifically refers only to the alleged ineffectiveness of trial counsel, Rick Couch.

the state appellate court noted that counsel's representation was not deficient, and there "was no evidence that Petitioner was incompetent or that he was unable to assist counsel in his defense." Id.

To be entitled to habeas corpus relief on his claim of ineffective assistance of counsel, Petitioner must demonstrate that the OCCA's adjudication of this claim was an unreasonable application of Strickland. Under Strickland, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland, 466 U.S. at 687; Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases.  Strickland, 466 U.S. at 687-88.  There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688.  In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential.  "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.  To establish the second prong, a defendant must show that this deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Sallahdin v. Gibson, 275 F.3d 1211, 1235 (10th Cir. 2002); Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999).  A federal habeas court may intercede only if the petitioner can overcome the "doubly deferential" hurdle resulting from application of the standards imposed by § 2254(d) and Strickland. Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011).

13

The Court agrees with the state district court and the OCCA that Petitioner cannot satisfy either the deficient performance or the prejudice prong of the <u>Strickland</u> standard. Although Petitioner now claims to have a history of mental illness, this does not necessarily mean that he was incompetent. <u>See</u> <u>Ake v. State</u>, 778 P.2d 460, 464 (Okla. Crim. App. 1989) (finding the defendant competent despite the fact that he suffered from schizophrenia). Because there is nothing in the record to suggest Petitioner did not have sufficient ability to consult with his lawyer or a rational understanding of the proceeding against him, the Court finds there was no prejudice from the alleged deficiency. <u>See</u> <u>id.</u> Petitioner has not demonstrated that his trial counsel was constitutionally ineffective for failing to raise an issue regarding Petitioner's competency at trial. He is not entitled to relief on his ground four claim.

### 4. Claims challenging second stage evidence are not cognizable (grounds 5 and 11)

In ground five, Petitioner complains that two of his felony convictions were improperly presented to the jury in second stage. He argues that, under Oklahoma law, the crimes were transactional and should not have been presented as separate crimes. The OCCA found that the prior convictions were not barred as transactional under Okla. Stat. tit. 21, § 51.1(C).  <u>See</u> Dkt. # 10, Ex. 3 at 10.  Petitioner raised no federal constitutional issue in his direct appeal or in ground five of his habeas petition. Because this claim is based solely on Oklahoma law, it is not cognizable in this federal habeas corpus proceeding and shall be denied on that basis. <u>See</u> Part B(2), above; <u>McGuire</u>, 502 U.S. at 67-68.

In ground eleven, Petitioner characterizes the second stage testimony of Pablo Carreno as victim impact testimony. He contends that Mr. Carreno's testimony about the injuries he suffered in the accident constituted victim impact evidence and was not permitted under Oklahoma law

14

because Petitioner was not charged with a capital crime. The OCCA specifically found that Carreno's testimony "was not victim impact evidence as contemplated by 22 O.S. 2001, § 984." Dkt. # 10, Ex. 3 at 11.   Again, this claim is based entirely on interpretation of state law and is not cognizable in this federal habeas proceeding. <u>See</u> Part B(2), above. Relief is denied on ground eleven.

### 5.  Prosecutorial misconduct (grounds 6 and 7)

Next, Petitioner complains that he was denied a fair trial by the prosecutor's improper conduct.  In ground six he specifically complains that the prosecutor: (1) improperly vouched for the credibility of Dr. Sibley and Dr. Weidner; (2) improperly claimed that Petitioner was guilty by the filing of charges; (3) referred to defense counsel's argument as "ridiculous;" (4) asked the jury to sympathize with the victim; and (5) implied that Petitioner was guilty because of the "type of person" he is -- one who receives oral sex at 5:30 in the morning at the Flying J Restaurant. In ground seven, Petitioner contends that the prosecutor improperly questioned the driver of the pickup truck regarding injuries he received in the accident. Upon review of the ground six claims, the OCCA stated "we have thoroughly reviewed each of Appellant's allegations of prosecutorial misconduct and find no comments, either singly or cumulatively, so prejudicial as to adversely affect the fundamental fairness of the trial." Dkt. # 10, Ex. 3 at 11 (citation omitted). As for the ground seven claim, the OCCA found that the testimony of Pablo Carreno was not victim impact evidence as Petitioner alleged. Even though the appellate court noted that the relevancy of Carreno's testimony was "questionable," any error in admitting such testimony was harmless beyond a reasonable doubt. <u>Id.</u>

Habeas corpus relief is available for prosecutorial misconduct only when the prosecution's conduct is so egregious in the context of the entire trial that it renders the trial fundamentally unfair. Donnelly v. DeChristoforo, 416 U.S. 637, 642-48 (1974); Cummings v. Evans, 161 F.3d 610, 618 (10th Cir. 1998). "To view the prosecutor's statements in context, we look first at the strength of the evidence against the defendant and decide whether the prosecutor's statements plausibly could have tipped the scales in favor of the prosecution." Fero v. Kerby, 39 F.3d 1462, 1474 (10th Cir. 1994) (quotations omitted); see also Smallwood v. Gibson, 191 F.3d 1257, 1275-76 (10th Cir. 1999).

The Court agrees with the OCCA that Petitioner's ground six allegations of prosecutorial misconduct, when viewed in the context of the entire trial, did not result in a fundamentally unfair trial. The prosecutor's comments regarding Dr. Sibley and Dr. Weidner were made to draw attention to the jury's responsibility to determine the credibility of witnesses, and their bias or motive for testifying. See Dkt. # 12-7, Tr. Trans Vol. III at 563-64. Next, rather than implying to the jury that the mere filing of charges meant Petitioner was guilty, the prosecutor was commenting on the State's obligation to prosecute a case that has merit and to question the witnesses to make sure the State is prosecuting the right person. Id. at 565-66. When the prosecutor used the word "ridiculous," he was arguing that the evidence did not support the defense theory that Petitioner was not driving the car. Id. at 586. The prosecutor's statement that "we don't get to hear from Rebecca Camp" was not specifically asking the jury to sympathize with the victim. Id. at 586-87. Even if improper, the comment was not so egregious that it rendered Petitioner's trial fundamentally unfair. Likewise, the prosecutor's comments about Petitioner's actions at the truck stop immediately before he led the police on a high speed chase, were proper comments on the evidence. A prosecutor is entitled to make fair comments on the circumstances of the crime and evidence of record. Hooper v. Mullin,

16

314 F.3d 1162, 1172 (10th Cir. 2002).  None of the complained of comments by the prosecutor so

infected Petitioner's trial with unfairness as to deny him due process. Neill v. Gibson, 278 F.3d

1044, 1061 (10th Cir. 2001) (citing Darden w. Wainwright, 477 U.S. 168, 181 (1986).  Petitioner

is not entitled to habeas corpus relief on ground six.

In ground seven, Petitioner alleges that it was error for the prosecutor to question the pickup

truck driver about his injuries resulting from the accident caused by Petitioner. The OCCA found

any error in admitting such testimony was harmless beyond a reasonable doubt, and that "[w]hen

considered in light of the other evidence of Appellant's guilt, the testimony did not have a

substantial influence on the outcome of the trial." See Dkt. # 10, Ex. 3 at 11 (citation omitted).

Assuming without finding that the testimony was improperly admitted, the Court agrees, for the

reasons discussed below, that the error was harmless.

In Fry v. Pliler, 551 U.S. 112 (2007), the Supreme Court held that "in § 2254 proceedings

a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under

the 'substantial and injurious effect' standard set forth in Brecht." Fry, 551 U.S. at 121. Under the

Brecht standard, a court must determine whether an error "had substantial and injurious effect or

influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 631, 638 (1993)

(quotation omitted).  An error has a "substantial and injurious effect" if a court is "in 'grave doubt'

about the effect of the error on the jury's verdict." Bland v. Sirmons, 459 F.3d 999, 1009 (10th Cir.

2006) (quoting O'Neal v. McAninch, 513 U.S. 432, 435 (1995)). "'Grave doubt' exists where the

issue of harmlessness is 'so evenly balanced that [we are] in virtual equipoise as to the harmlessness

of the error.'" Id. at 1009-10 (quoting O'Neal, 513 U.S. at 435). Relevant factors a court may

consider in a harmlessness analysis include the importance of the evidence to the government's case,

whether the evidence was cumulative, whether there is other evidence corroborating or contradicting the evidence, and the strength of the government's case. Cf. Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986) (listing factors to consider when conducting harmless-error analysis under Chapman). In this case, the evidence against Petitioner was overwhelming.   Petitioner cannot demonstrate that any error in the prosecutor's questioning of the pickup driver had "a substantial and injurious effect or influence in determining the jury's verdict," as required under Brecht. Petitioner is not entitled to habeas corpus relief on his claim challenging the prosecutor's questioning of the pickup driver.

Having failed to demonstrate that the OCCA's rejection of Petitioner's prosecutorial misconduct claims was an unreasonable application of Supreme Court law, or an unreasonable determination of the facts presented as evidence, Petitioner is not entitled to habeas corpus relief on either ground six or ground seven.

### 6.  Ineffective assistance of trial counsel for failing to object (ground 8)

Petitioner argues that his trial counsel was ineffective for failing to object to the instances of prosecutorial misconduct described in grounds six and seven. Rejecting this issue on direct appeal, the OCCA found as follows:

> In Proposition VIII, Appellant contends he received ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) by counsel's failure to lodge contemporaneous objections to the claims of error raised on appeal. Having throughly addressed each of the claims of error raised on appeal, whether met with a contemporaneous objection or not, and having found none of the claims warrant relief, Appellant has failed to meet the requirements of *Strickland* because any objections raised by defense counsel would have been properly overruled.

Dkt. # 10, Ex. 3 at 11-12 (some citations omitted). The Court agrees. The Court determined above that Petitioner's trial was not rendered fundamentally unfair as a result of comments made by the prosecutor. Therefore, Petitioner has not shown that his trial counsel's performance in failing to

object to the instances of alleged prosecutorial misconduct fell below an objective standard of reasonableness, or that any alleged deficiencies in performance prejudiced his defense. <u>Strickland</u>, 466 U.S. at 687-88. Accordingly, the OCCA's holding was not contrary to, or an unreasonable application of <u>Strickland</u>. Habeas relief shall be denied on ground eight.

### 7.  Failure to issue requested jury instructions (grounds 9 and 12)

In ground nine, Petitioner contends that the trial court erred when it refused to provide the jury with an instruction on the meaning of "reasonable doubt." The OCCA found that the trial court did not abuse its discretion in rejecting Petitioner's proffered instruction attempting to define "reasonable doubt" and noted that it consistently disapproved of attempts to define "reasonable doubt." <u>See</u> Dkt. # 10, Ex. 3 at 12-13.

This issue has been addressed by the United States Supreme Court in <u>Victor v. Nebraska</u>, 511 U.S. 1, 5 (1994), as follows:

> The beyond a reasonable doubt standard is a requirement of due process, but the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course. <u>Cf.</u> <u>Hopt v.Utah</u>, 120 U.S. 430, 440-441, 7 S. Ct. 614, 618-20, 30 L. Ed. 708 (1887). Indeed, so long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, see <u>Jackson  v. Virginia</u>, 443 U.S. 307, 320 n.14, 99 S. Ct. 2781, 2789, n.14, 61 L. Ed. 2d 560 (1979), the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof.

<u>Victor</u>, 511 U.S. at 5. Petitioner has failed to demonstrate that the OCCA's adjudication of this claim was contrary to, or an unreasonable application of, clearly established federal law, or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented at trial. 28 U.S.C. § 2254(d)(1),(2). Nothing provided by Petitioner suggests that there is a reasonable likelihood that his jury was misled or understood their instructions to allow conviction based on proof insufficient to meet the constitutional requirement of "reasonable doubt." Therefore,

Petitioner's trial was not rendered fundamentally unfair as a result of the trial court's failure to instruct the jury as requested by Petitioner.  Petitioner is not entitled to habeas corpus relief under § 2254(d) on ground nine.

As his twelfth ground of error, Petitioner complains that he was denied a fair trial when the trial court refused to issue a lesser included instruction on Negligent Homicide. The OCCA rejected this claim, as follows:

> In Proposition IV, we find the trial court did not abuse its discretion in refusing Appellant's requested instruction on the lesser offense of negligent homicide. Initially, Appellant claimed innocence by denying his [sic] was the driver of the red car. Therefore, he was not entitled to any lesser included instructions. Despite Appellant's claim of innocence, the evidence in this case simply did not warrant an instruction on the lesser offense.
>
> In determining the sufficiency of the evidence to support a lesser offense we look at whether the evidence might allow a jury to acquit the defendant of the greater offense and convict him of the lesser. The uncontroverted evidence in this case showed that Appellant eluded the police in a high speed chase and that as a result he caused a collision which resulted in great bodily injury to the passenger in his car. Under this evidence, a rational trier of fact could only have found Appellant guilty as charged. Therefore, the trial court did not abuse its discretion in denying the requested instruction.

Dkt. # 10, Ex. 3 at 9-10 (footnotes omitted).

Petitioner's case was a non-capital case. Tenth Circuit precedent establishes a rule of "automatic non-reviewability" for claims based on a state court's failure, in a non-capital case, to give a lesser included offense instruction.  Dockins v. Hines, 374 F.3d 935, 938 (10th Cir. 2004) (stating that neither the Tenth Circuit nor the United States Supreme Court has ever recognized a federal constitutional right to a lesser included offense instruction in non-capital cases). For that reason, Petitioner is not entitled to habeas relief on his claim challenging the trial court's failure to issue a lesser-included offense instruction on Negligent Homicide.

In addition, it is well established that "[a]s a general rule, errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, 'unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law.'" <u>Nguyen v. Reynolds</u>, 131 F.3d 1340, 1357 (10th Cir. 1997) (quoting <u>Long v. Smith</u>, 663 F.2d 18, 23 (6th Cir. 1981)); <u>see</u> <u>also</u> <u>Maes v. Thomas</u>, 46 F.3d 979, 984 (10th Cir. 1995) ("A state trial conviction may only be set aside in a habeas proceeding on the basis of erroneous jury instructions when the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial."). Thus, the burden on a petitioner attacking a state court judgment based on a refusal to give a requested jury instruction is especially great because "'[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law.'" <u>Maes</u>, 46 F.3d at 984 (quoting <u>Henderson v. Kibbe</u>, 431 U.S. 145, 155 (1977)).

Petitioner has failed to demonstrate that the OCCA's adjudication of his ground twelve claim was contrary to, or an unreasonable application of, clearly established federal law, or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented at trial. 28 U.S.C. § 2254(d)(1),(2). The Court agrees with the OCCA's assessment that the evidence did not support an instruction on Negligent Homicide. Petitioner's trial was not rendered fundamentally unfair as a result of the trial judge's failure to issue the requested instruction. Petitioner is not entitled to habeas corpus relief under § 2254(d) on ground twelve.

**8. Cumulative error resulting in an excessive sentence (ground 10)**

Next, Petitioner argues that the combined effect of the errors at trial entitles him to a reduction in sentence to a term no greater than twenty (20) years. See Dkt. # 1, attachment A at 16. On direct appeal, the OCCA concluded that, "any errors in this case whether considered singly or cumulatively do not warrant reversal or modification of Appellant's conviction or sentences." Dkt. # 10, Ex. 3 at 13.

In analyzing a cumulative error claim, the proper inquiry "aggregates all the errors that individually might be harmless [and therefore insufficient to require reversal], and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." United States v. Wood, 207 F.3d 1222, 1237 (10th Cir. 2000) (quotation omitted). Cumulative error analysis is applicable only where there are two or more actual errors. Workman v. Mullin, 342 F.3d 1100, 1116 (10th Cir. 2003). Cumulative impact of non-errors is not part of the analysis. Le v. Mullin, 311 F.3d 1002, 1023 (10th Cir. 2002) (citing Rivera, 900 F.2d at 1471). In this case, the Court did not find two or more actual errors. As a result, the Court finds no basis for a cumulative error analysis. Therefore, Petitioner has failed to demonstrate that the OCCA's rejection of this claim was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d).

Coupled with his cumulative error claim is a demand for a reduced sentence, not to exceed twenty (20) years. A habeas court affords "wide discretion to the state trial court's sentencing decision, and challenges to the decision are not generally constitutionally cognizable, unless it is shown that the sentence imposed is outside the statutory limits or unauthorized by law." Dennis, 222 F.3d at 1258. Federal habeas review generally ends "once we determine the sentence is within the

limitation set by statute." <u>Id.</u>  In this case, because Petitioner had been previously convicted of more than two felonies, he was subject to being sentence to up to life in prison on each of his convictions. <u>See</u> Okla. Stat. tit. 21, § 51.1(B),(C). Thus, the sentences imposed were within the limitations of Oklahoma law. There is no basis for habeas relief.

## C.  Certificate of appealability

Rule 11, <u>Rules Governing Section 2254 Cases in the United States District Courts</u>, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000) (citing <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 (1983)).

The Court concludes that a certificate of appealability should not issue. Nothing suggests that the Tenth Circuit would find that this Court's application of deference to the decision by the OCCA was debatable amongst jurists of reason.  <u>See</u> <u>Dockins</u>, 374 F.3d at 938. The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently. A certificate of appealability shall be denied.

### *CONCLUSION*

After careful review of the record in this case, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States. Therefore, his petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED that** the petition for writ of habeas corpus (Dkt. # 1) is **denied**. A separate judgment shall be entered in this matter. A certificate of appealability is **denied**.

DATED THIS 4th day of December, 2012.

James H. Payne
United States District Judge
Northern District of Oklahoma

24